1

2

3

4

5

6

7

8

9

10

11

12

13

14

FILED

2006 OCT 17  PM 4: 16

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 05cr1150-LAB |
| Plaintiff-Appellee, | [Ninth Circuit Court of Appeals Case No. 06-50146] |
| vs. | |
| JOSE REFUGIO ALVARADO-NOLASCO, | |
| Defendant-Appellant. | |

15    On September 11, 2006, the Appellate Commissioner for the Ninth Circuit Court of

16    Appeals issued an order in Case No. 06-50146 requesting this court determine whether

17    Defendant-Appellant Jose Refugio Alvarado-Nolasco ("Alvarado-Nolasco") could show

18    excusable neglect for filing a notice of appeal more than 10 days after the entry of judgment.

19    The Commissioner's order directed this court to provide Alvarado-Nolasco notice and an

20    opportunity to demonstrate he was entitled to relief from the 10-day deadline.

21    This court has reviewed the docket and the record in this case and finds Alvarado-

22    Nolasco cannot demonstrate excusable neglect prevented his timely filing of a notice of

23    appeal because he voluntarily waived his right to appeal. For this reason, the court declines

24    to provide Alvarado-Nolasco with a further opportunity to demonstrate he is entitled to relief

25    from the 10-day deadline for filing an appeal. In this court's judgment, providing such notice

26    to Alvarado-Nolasco, who previously and irrevocably waived his right to appeal, would

27    unnecessarily risk the possibility of creating a right to appeal where none exists. *See United*

28    ///

1 | *States v. Buchanan*, 59 F.3d 914, 916-18 (9th Cir. 1995) (district court's statements created

2 | right to appeal despite express waiver of right to appeal in plea agreement).

3 | The factual and procedural history of this case is not complicated. Alvarado-Nolasco

4 | was represented by counsel throughout his case.  He appeared before Magistrate Judge

5 | William McCurine, Jr., waived indictment, and pursuant to a negotiated plea agreement pled

6 | guilty to a one-count Indictment charging him with being:

7
8
9
10
11

> . . . an alien, who previously had been excluded, deported and removed from the United States, . . . found in the United States, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Section 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

12 | The charge carries a maximum penalty of 10 years imprisonment, a \$250,000 fine, a

13 | mandatory special assessment of \$100 per count, and a term of supervised release of not

14 | more than three years.  (Plea Agreement, filed 10/3/05 ("Plea Agreement"), ¶ III at 3

15 | (attached as Exhibit 1);  Reporter's Transcript of 10/3/05 Disposition ("RT 10/3/05") at 7-8)

16 | (attached as Exhibit 2).  The plain terms of the Plea Agreement informed Alvarado-Nolasco

17 | that by pleading guilty, he was waiving certain constitutional and statutory rights, including

18 | his right to appeal or collaterally attack his conviction and sentence:

19
20
21
22

> In exchange for the Government's concessions in this plea agreement, **defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, ... unless the Court imposes a custodial term greater than the high end of the guideline range ... recommended by the Government pursuant to this agreement at the time of sentencing.**

23 | (Plea Agreement ¶ XI at 8 (emphasis added).)

24 | During Alvarado-Nolasco's plea colloquy with Judge McCurine, his counsel told the

25 | court she had gone over the plea agreement "in its entirety" with him and that he understood

26 | it "in its entirety" – including, in particular, the waiver of appeal provision. (RT10/3/05 at 11,

27 | 13).  Alvarado-Nolasco also expressly acknowledged to Judge McCurine that he understood

28 | the waiver of appeal provision:

- 2 -

1    THE COURT: There are two terms, sir, in your appeal – in your plea agreement that I want to make sure you understand. They

2    appear at XI on page 8 of the plea agreement. Those terms are an appeal, and collateral attack. An appeal means to go to a

3    higher court and ask that higher court to review or change some action that has happened at this level, the trial court level. Or

4    [sic] collateral attack means to go to a court or authority somewhere else, and in that other place challenge the validity of

5    your plea, conviction or sentence in this Court.

6    Do you understand those two terms?

7    MR. ALVARADO-NOLASCO (through interpreter): Yes, your Honor.

8

9    THE COURT: Let me explain – or let me read the relevant language from your plea agreement:

10    'In exchange for the Government's concessions in this plea agreement, Defendant waives to the full extent of the law any

11    right to appeal or to collaterally attack the conviction and sentence, unless the Court imposes a custodial sentence

12    greater than the high end of the guideline range recommended by the Government pursuant to this agreement at the time of

13    sentencing. If the custodial sentence is greater than the high end of that range, the Defendant may appeal, but the Government

14    will be free to support on appeal the sentence actually imposed.'

...

15    Do you understand that that is part of your plea agreement?

16

17    MR. ALVARADO-NOLASCO (through interpreter): Yes, Your Honor.

18    (*Id*. at 12-13).

19    Although the plea agreement contained one exception to Alvarado-Nolasco's waiver

20    of his right to appeal or collaterally attack his conviction and sentence – allowing an appeal

21    if the court imposed a longer custodial sentence than the one recommended by the

22    Government (Plea Agreement ¶ XI at 8) – the exception was not triggered in this case. At

23    the sentencing hearing held on January 3, 2006, the court followed the terms of the plea

24    agreement, imposing the low-end guideline sentence recommended by the Government.

25    (Reporter's Transcript of Sentencing Hearing, 1/3/06 ("RT 1/03/06") at 12 (attached as

26    Exhibit 3). Thus, the waiver of appeal provision remained in full force – a point confirmed

27    by Alvarado-Nolasco's counsel and the court at the conclusion of the sentencing hearing:

28    / / /

1   THE COURT: Ms. LaCombre, do you agree that the sentence
2   pronounced is contemplated by the plea agreement and results
    in a wavier of any right to appeal or collaterally attack the
3   judgment of the court in the future?

4   MS. LACOMBRE: I do.

5   THE COURT: I make that finding as well.

6   (RT 1/3/06 at 13).

7       The record in this case establishes Alvarado-Nolasco irrevocably waived his right to

8   challenge his sentence on appeal. Therefore, any possibility the court would find excusable

9   neglect in Alvarado-Nolasco's failure to file a notice of appeal on time is foreclosed.

10  Permitting the Alvarado-Nolasco to now advance reasons why he should be permitted relief

11  to file an appeal would amount to a futile gesture – but one the defendant might very well

12  understand as a tacit acknowledgment from the court that he somehow retained the right to

13  appeal. The court declines to permit the defendant the opportunity to revive a right he

14  knowingly and voluntarily waived in exchange for receiving sentencing concessions from the

15  Government. Because Alvarado-Nolasco did not retain a right to appeal, this court finds no

16  excusable neglect supports his late and unauthorized filing of a notice of appeal.

17  **IT IS SO ORDERED**.

18

19  DATED: ___10-16-06___                *Larry A. Burns*

20                                        **HONORABLE LARRY ALAN BURNS**
    United States District Judge
21

22

23  cc:    Appellate Commissioner Peter L. Shaw
    Vicki Marolt Buchanan, Esq.
24  Mary Fan, AUSA

25

26

27

28

- 4 -                       05cr1150

**EXHIBIT 1**

FILED

OCT 3 2005

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

1 | CAROL C. LAM
United States Attorney
2 | JASON GOLDBERG
Assistant U.S. Attorney
3 | California State Bar No. 219212
Federal Office Building
4 | 880 Front Street, Room 6293
San Diego, California 92101-8893
5 | Telephone: (619) 557-6775

6 | Attorneys for Plaintiff
United States of America
7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | UNITED STATES OF AMERICA, )   Criminal Case No. 05CR1150-LAB
                               )
11 |              Plaintiff,   )
                               )
12 |        v.                 )
                               )   PLEA AGREEMENT
13 | JOSE REFUGIO              )
        ALVARADO-NOLASCO,     )
14 |                           )
              Defendant.       )
15 |                           )
                               )
16 | _____)

17 |        IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its

18 | counsel, Carol C. Lam, United States Attorney, and Jason Goldberg, Assistant United States Attorney,

19 | and defendant, Jose Refugio Alvarado-Nolasco, with the advice and consent of Stephanie LaCambra,

20 | Esq., of Federal Defenders of San Diego, Inc., counsel for defendant, as follows:

21 | //

22 | //

23 | //

24 | //

25 | //

26 | //

27 | //

28 |

Def. Initials _J.A_

05CR1150-LAB

Exhibit 1

# I.

## THE PLEA

Defendant agrees to plead guilty to Count One in the Indictment charging defendant with:

On or about May 9, 2005, within the Southern District of California, defendant JOSE REFUGIO ALVARADO-NOLASCO, an alien, who previously had been excluded, deported and removed from the United States, was found in the United States, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

# II.

## NATURE OF THE OFFENSE

### A.   ELEMENTS EXPLAINED

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

    1.    Defendant is an alien;

    2.    Defendant was deported from the United States; and

    3.    Defendant reentered the United States without the consent of the Secretary of the Department of Homeland Security or any other representative of that department.

### B.   ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

    1.    The Defendant is a citizen and national of Mexico and not a citizen of the United States.

    2.    The Defendant was lawfully deported and removed from the United States on May 7, 2005.

    3.    Defendant was deported and removed on May 7, 2005 after suffering a felony conviction on November 8, 2000 for possession of a controlled substance, in violation of California Penal Code, Section 11350(a), in Superior Court of California, County of Santa Clara.

    4.    That on or about May 9, 2005, Defendant was found in the United States near Dulzura, California, about 30 miles south and east of San Diego, near the United States border with Mexico.

Def. Initials *J.A.N.*

05CR1150-LAB

5.    The Defendant reentered the United States without having received permission to return to the United States from the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security.

### III.

### PENALTIES

Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

A.    a maximum 10 years in prison;

B.    a maximum $250,000 fine;

C.    a mandatory special assessment of $100 per count; and

D.    a term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.

Defendant further understands that by pleading guilty defendant may be deported or removed and may become ineligible for federal benefits.

### IV.

### DEFENDANT'S WAIVER OF TRIAL RIGHTS

Defendant understands that this guilty plea waives the right to:

A.    continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B.    a speedy and public trial by jury;

C.    the assistance of counsel at all stages of trial;

D.    confront and cross-examine adverse witnesses;

E.    present evidence and to have witnesses testify on behalf of defendant; and

F.    not testify or have any adverse inferences drawn from the failure to testify.

Def. Initials J.A.N.

3

05CR1150-LAB

**V.**

**DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE
PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION**

The Government represents that any information establishing the factual innocence of defendant known to the undersigned prosecutor in this case has been turned over to defendant. The Government will continue to provide such information establishing the factual innocence of defendant.

Defendant understands that if this case proceeded to trial, the Government would be required to provide impeachment information relating to any informants or other witnesses. In addition, if defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. Defendant acknowledges, however, that by pleading guilty defendant will not be provided this information, if any, and Defendant also waives the right to this information. Finally, defendant agrees not to attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

**VI.**

**DEFENDANT'S REPRESENTATION THAT GUILTY
PLEA IS KNOWING AND VOLUNTARY**

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel, and has a clear understanding of the charges and the consequences of this plea;

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the court;

C. No one has threatened defendant or defendant's family to induce this guilty plea; and

D. Defendant is pleading guilty because in truth and in fact defendant is guilty and for no other reason.

**VII.**

**AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF CALIFORNIA**

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory

Def. Initials J.A.N

4

05CR1150-LAB

1  authorities, although the Government will bring this plea agreement to the attention of other authorities

2  if requested by the defendant.

3                                          **VIII.**

4                            **SENTENCING GUIDELINES**

5       Defendant understands the sentence imposed will be based on the factors set forth in 18 U.S.C.

6  § 3553(a). Defendant understands further that in imposing the sentence, the sentencing judge must

7  consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant

8  has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory,

9  not mandatory, and the court may impose a sentence more severe or less severe than otherwise

10  applicable under the Guidelines, up to the maximum in the statute of conviction. Defendant understands

11  further that the sentence cannot be determined until a presentence report has been prepared by the

12  U.S. Probation Office and defense counsel and the Government have had an opportunity to review and

13  challenge the presentence report. Nothing in this plea agreement shall be construed as limiting the

14  Government's duty to provide complete and accurate facts to the district court and the U.S. Probation

15  Office.

16                                          **IX.**

17             **SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE**

18       This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

19  Defendant understands that the sentence is within the sole discretion of the sentencing judge. The

20  Government has not made and will not make any representation as to what sentence defendant will

21  receive. Defendant understands that the sentencing judge may impose the maximum sentence provided

22  by statute, and is also aware that any estimate of the probable sentence by defense counsel is a

23  prediction, not a promise, and is **not binding on the Court**. Likewise, the recommendation made by

24  the Government is not binding on the Court, and it is uncertain at this time what defendant's sentence

25  will be. Defendant also has been advised and understands that if the sentencing judge does not follow

26  any of the parties' sentencing recommendations, defendant nevertheless has no right to withdraw the

27  plea.

28

                                                      Def. Initials _J.A.N_

                                   5                              05CR1150-LAB

## X.

### PARTIES' SENTENCING RECOMMENDATIONS

A.   BASE OFFENSE LEVEL AND GOVERNMENT'S RECOMMENDATIONS

Although the parties understand that the Guidelines are only advisory and just one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable) under the Guidelines:

| | | | |
|---|---|---|---|
| 1. | Base Offense Level [§ 2L1.2] | | 8 |
| 2. | Specific Offense Characteristic Prior felony conviction [§ 2L1.2(b)(D)] | | +4 |
| 3. | Acceptance of Responsibility [§ 3E1.1] | | -2 |
| | **Adjusted Offense Level** | | **10** |

B.   ACCEPTANCE OF RESPONSIBILITY

Notwithstanding paragraph A.3 above, the Government will <u>not</u> recommend any adjustment for Acceptance of Responsibility if defendant:

1.   Fails to admit a complete factual basis for the plea at the time it is entered, or

2.   Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the Court or probation officer, or

3.   Fails to appear in court, or

4.   Engages in additional criminal conduct, or

5.   Attempts to withdraw the plea.

C.   NO OTHER ADJUSTMENTS ARE RECOMMENDED

The parties agree not to recommend any upward or downward adjustments other than those listed above.

D.   NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

There is no agreement as to defendant's Criminal History Category.

Def. Initials J.A.M

6

05CR1150-LAB

E.    NO DEPARTURES ARE RECOMMENDED

The parties agree not to recommend any upward or downward departures, including any criminal history departures under § 4A1.3, except as set forth herein.

F.    "RELEVANT CONDUCT" INFORMATION

Defendant agrees that the facts in the "factual basis" paragraph of this agreement are true, and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. §3553(a)(1).

G.    PARTIES' RECOMMENDATION REGARDING CUSTODY

The parties agree that the Government will recommend that defendant be sentenced to the **low end** of the advisory guideline range as calculated by the Government pursuant to this agreement. However, if the Court adopts an offense level or downward adjustment or departure below the Government's recommendations in this plea agreement, the Government will recommend a sentence as near as possible to what the sentence would have been if the Government's recommendations had been followed.

H.    SPECIAL ASSESSMENT

The parties will jointly recommend that defendant pay a special assessment in the amount of $100.00 to be paid forthwith at time of sentencing. The special assessment shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

I.    STIPULATED DEPORTATION

Either before or immediately following sentencing, Defendant agrees to appear before an Immigration Judge and stipulate to the entry of an order of deportation. Defendant understands that Defendant will not be deported until Defendant has served any criminal sentence imposed in this or any other case. Defendant further waives any right to appeal, reopen or challenge the deportation order.

//

//

//

Def. Initials *I.A.N*

7

05CR1150-LAB

# XI.

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

In exchange for the Government's concessions in this plea agreement, defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order, unless the Court imposes a custodial sentence greater than the high end of the guideline range (or statutory mandatory minimum term, if applicable) recommended by the Government pursuant to this agreement at the time of sentencing. If the custodial sentence is greater than the high end of that range, the defendant may appeal, but the Government will be free to support on appeal the sentence actually imposed. If defendant believes the Government's recommendation is not in accord with this agreement, defendant will object at the time of sentencing; otherwise the objection will be deemed waived.

# XII.

## CRIMES AFTER ARREST OR BREACH OF THE AGREEMENT WILL PERMIT THE GOVERNMENT TO RECOMMEND A HIGHER SENTENCE OR SET ASIDE THE PLEA

This plea agreement is based on the understanding that, prior to defendant's sentencing in this case, defendant has not committed or been arrested for any offense not known to the Government prior to defendant's sentencing. This plea agreement is further based on the understanding that defendant has committed no criminal conduct since defendant's arrest on the present charges, and that defendant will commit no additional criminal conduct before sentencing. If defendant has engaged in or engages in additional criminal conduct during this period, or breaches any of the terms of any agreement with the Government, the Government will not be bound by the recommendations in this plea agreement, and may recommend any lawful sentence. In addition, at its option, the Government may move to set aside the plea.

# XIII.

## ENTIRE AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

Def. Initials J.A.M

8

05CR1150-LAB

## XIV.

### MODIFICATION OF AGREEMENT MUST BE IN WRITING

No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XV.

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant has read it (or that it has been read to defendant in defendant's native language).  Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XVI.

### DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation.

CAROL C. LAM
United States Attorney

9/23/2005
DATED

JASON GOLDBERG
Assistant U.S. Attorney

9/23/05
DATED

STEPHANIE LACAMBRA
Defense Counsel

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE.

9/23/05
DATED

JOSE REFUGIO ALVARADO-NOLASCO
Defendant

Def. Initials _____

9

05CR1150-LAB

ORIGINAL



**AD HOC
REPORTING**

The Chamber Building
110 West C Street
Suite 807
San Diego, CA
92101

619 236-9325

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
WESTERN REGION

UNITED STATES OF AMERICA,          )   Case No. 05CR1150-LAB
                                   )
                 Plaintiff,        )   San Diego, California
                                   )   Monday, October 3, 2005
        vs.                        )
                                   )
JOSE REFUGIO                       )
ALVARADO-NOLASCO,                  )
                                   )
                 Defendant.        )
_____   )

TRANSCRIPT OF DISPOSITION
BEFORE THE HONORABLE WILLIAM McCURINE, JR.
UNITED STATES MAGISTRATE JUDGE

Transcription Service:      Michael J. Williamson
                            Ad Hoc Reporting
                            110 West C Street, Suite 807
                            San Diego, California 92101
                            (619) 236-9325

Exhibit 2

1
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
2
WESTERN REGION

3

4  UNITED STATES OF AMERICA,    )    Case No. 05CR1150-LAB
                                )
5            Plaintiff,         )    San Diego, California
                                )    Monday, October 3, 2005
6       vs.                     )
                                )
7  JOSE REFUGIO                 )
   ALVARADO-NOLASCO,            )
8                               )
              Defendant.        )
9  _____)

10

                 TRANSCRIPT OF DISPOSITION HEARING
11        BEFORE THE HONORABLE WILLIAM McCURINE, JR.
                  UNITED STATES MAGISTRATE JUDGE
12

13  APPEARANCES:

14  For Plaintiff:               JASON M. GOLDBERG, ESQ.
                                 Assistant United States Attorney
15                               880 Front Street, Fifth Floor
                                 San Diego, California 92101
16                               (619) 557-5610

17  For Defendant:               STEPHANIE LaCAMBRA, ESQ.
                                 Federal Defenders of San Diego
18                               225 Broadway, Suite 900
                                 San Diego, California 92101
19                               (619) 234-8367

20  Transcription Service:       Michael J. Williamson
                                 Ad Hoc Reporting
21                               110 West C Street, Suite 807
                                 San Diego, California  92101
22                               (619) 236-9325

23

24

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

1    <u>SAN DIEGO, CALIFORNIA  MONDAY, OCTOBER 3, 2005</u>

2                          --oOo--

3        (Call to order of the Court.)

4            MS. LaCAMBRA:  Again, Stephanie LaCambra for Mr.

5    Alvarado, who is in custody and now present before the Court,

6    and being assisted by a Spanish -- a court-certified Spanish-

7    speaking interpreter.

8            THE COURT:  And did you say Mr. Goldberg?

9            MR. GOLDBERG:  I did.

10           MS. LaCAMBRA:  Your Honor, it's my understanding

11   that Mr. Alvarado has signed the Rule 11 waiver and is

12   prepared to go forward with his disposition, according to the

13   plea agreement we have reached with the Government in this

14   case.

15           THE COURT:  Okay.  Mr. LaCambra (sic), you have the

16   right to have -- oh --

17           MS. LaCAMBRA:  Mr. Alvarado.

18           THE COURT:  Mr. Alvarado -- we're going to let you

19   remain single for the time being.  Okay.

20           MS. LaCAMBRA:  I appreciate that.  Thank you very

21   much.

22           THE CLERK:  Do you want me to arraign Mr. --

23           THE COURT:  Yes, and swear him.

24           THE CLERK:  Jose Refugio Alvarado-Nolasco; is that

25   you, sir?

1          MR. ALVARADO-NOLASCO (through Interpreter):  Yes.

2          THE CLERK:  Do yo now desire to withdraw your plea

3   of not guilty to Count 1 of the indictment, charging you,

4   sir, with -- is it deported alien or reentry? -- deported

5   alien found in the United States, and to plead guilty?

6          MR. ALVARADO-NOLASCO (through Interpreter):  Yes.

7          THE CLERK:  Do you -- how do you now plead to

8   Count 1 of the indictment, guilty or not guilty?

9          MR.   ALVARADO-NOLASCO   (through   Interpreter):

10  Guilty.

11         THE CLERK:  Counsel, do you waive reading of the

12  charge?

13         MS. LaCAMBRA:  We do.

14         THE CLERK:  Please raise your right hand.

15
        JOSE REFUGIO ALVARADO-NOLASCO, DEFENDANT, SWORN
16                     (Through Interpreter)

17         THE COURT:  Okay.  Mr. Alvarado, you appear to have

18  waived your right knowingly to have your plea entered before

19  a district judge of this Court, and instead to have your plea

20  entered before me, a U.S. magistrate judge.  I'm looking at

21  a form entitled "Consent to Rule 11 plea in a felony case

22  before United States magistrate judge." Is that in fact your

23  desire, sir?

24         MR. ALVARADO-NOLASCO (through Interpreter):  Yes,

25  sir.

4

1          THE COURT:   On the second page, above the typed

2   word "Defendant" is a signature that I'm holding up for you

3   to see.   Is that your signature?

4          MR. ALVARADO-NOLASCO (through Interpreter):   Yes,

5   sir.

6          THE COURT:   Ms. LaCambra, are you satisfied that

7   your client understand the ramifications of signing the

8   consent?

9          MS. LaCAMBRA:   I am, Your Honor.

10          THE COURT:  Okay.  Then I will accept your consent,

11   sir.

12          And I want you to know that you have the following

13   constitutional rights:

14          You have the right to continue to plead that you

15   are not guilty.

16          You have the right to a speedy and a public trial.

17          You have the right to a trial before a jury, where

18   the Government must prove each element of its case against

19   you beyond a reasonable doubt.  If you decide that you would

20   like to proceed to trial before a judge without a jury, the

21   Government would have the same burden of proof.

22          You have the right to be represented by an attorney

23   at all stages of the proceedings against you, including

24   trial, and if you cannot afford an attorney, I will appoint

25   an attorney to represent you.

5

1    You also have the right to confront and cross-
2  examine any and all witnesses called to testify against you.
3  And you have the right to put on your own defense, which
4  includes the right to subpoena witnesses to trial to testify
5  on your behalf.

6    Finally, you have the right not to testify or
7  cooperate with the Government, and the Government cannot
8  criticize you or comment on the fact that you have refused to
9  testify or cooperate.

10    Do you understand, Mr. Alvarado, that you have
11  these rights?

12    MR. ALVARADO-NOLASCO (through Interpreter): Yes,
13  sir.

14    THE COURT: If you plead guilty today, there will
15  not be a trial, and you will be giving up the rights I have
16  just described.

17    Do you understand that?

18    MR. ALVARADO-NOLASCO (through Interpreter): Yes,
19  sir.

20    THE COURT: Mr. Goldberg, would you please state
21  for Mr. Alvarado the elements that the Government would have
22  to prove beyond a reasonable doubt in order to obtain a
23  conviction against him.

24    MR. GOLDBERG: The elements of the offense are:
25  that, one, the Defendant is an alien; two, that the Defendant

6

1    was deported from the United States; and three, that the

2    Defendant reentered the United States without the consent of

3    the Secretary of the Department of Homeland Security or any

4    other representative of that department.

5              MS. LaCAMBRA:  One moment, Your Honor.

6              THE COURT:  Certainly.

7         (Ms. LaCambra and Mr. Alvarado-Nolasco confer.)

8              MS. LaCAMBRA:  Thank you, Your Honor.

9              THE COURT:  Okay.  Ms. LaCambra, do you agree that

10   the elements that Mr. Goldberg has recited are the correct

11   elements?

12             MS. LaCAMBRA:  I do, Your Honor.

13             THE COURT:  And Mr. Alvarado, do you understand

14   that the Government has just recited the elements it must

15   prove against you?

16             MR. ALVARADO-NOLASCO (through Interpreter):  Yes,

17   sir.

18             THE COURT:  Mr. Goldberg, would you now describe

19   the factual basis which underlies this plea?

20             MR. GOLDBERG:  Yes, Your Honor.  I'd refer the

21   Court to pages 2 and 3 of the plea agreement.  That contains

22   the factual basis.  The factual basis is as follows:  that

23   the Defendant is a citizen and national of Mexico, and not a

24   citizen of the United States; that the Defendant was lawfully

25   deported and removed from the United States on May 7th, 2005;

1    that the Defendant was deported and removed on May 7, 2005

2    after suffering a felony conviction on November 8, 2000 for

3    possession of a controlled substance, in violation of

4    California Penal Code, Section 11350(a), in the Superior

5    Court of California, County of Santa Clara; that on or about

6    May 9th, 2005, the Defendant was found in the United States

7    near Dulzura, California, about 30 miles south and east of

8    San Diego, near the United States border with Mexico; and

9    finally, that the Defendant reentered the United States

10   without having received permission to return to the United

11   States from the Attorney General of the United States or his

12   designated successor, the Secretary of the Department of

13   Homeland Security.

14          THE COURT:  Ms. LaCambra, do you understand those

15   facts to be true?

16          MS. LaCAMBRA:  I do, Your Honor.

17          THE COURT:  And Mr. Alvarado, do you admit that

18   those facts are true?

19          MR. ALVARADO-NOLASCO (through Interpreter):  Yes,

20   sir.

21          THE COURT:  Ms. LaCambra, would you please recite

22   for your client the maximum penalties and fines he will -- or

23   can face as a result of pleading guilty.

24          MS. LaCAMBRA:  Mr. Alvarado has been advised that

25   he faces a maximum of ten years in prison, a maximum $250,000

8

1    fine, a mandatory special assessment of a hundred dollars per

2    count, and a term of supervised release of not more than

3    three years.  And I have advised that Mr. Alvarado that

4    failure to comply with any of the conditions of his

5    supervised release may result in revocation of his supervised

6    release, requiring him to serve in prison all or part of the

7    term of his supervised release.

8            THE COURT:  And Mr. Goldberg, do you agree that

9    those are the maximum penalties?

10           MR. GOLDBERG:  The Government agrees, Your Honor.

11           THE COURT:  And Mr. Alvarado, in addition, if you

12   are out on supervised release and violate one of the

13   conditions of your release, you can be imprisoned for a

14   period up to three years over and above the time you will

15   have already served for the original offense.

16           Do you understand that?

17           MR. ALVARADO-NOLASCO (through Interpreter):  Yes,

18   sir.

19           THE COURT:  You are also likely to be deported as

20   a result of your guilty plea.  Do you understand?

21           MR. ALVARADO-NOLASCO (through Interpreter):  Yes,

22   sir.

23           THE COURT:  Have you discussed the Sentencing

24   Guidelines with Ms. LaCambra and how they might impact your

25   case?

1           MR. ALVARADO-NOLASCO (through Interpreter):  Yes,
2  sir.

3           THE COURT:   The sentencing judge, in your case,
4  Judge Burns, will regard the Sentencing Guidelines as
5  advisory and not mandatory.   He may depart from those
6  guidelines as he sees fit in your case.   As a result, he
7  might give you the maximum sentence of ten years, the maximum
8  fine of $250,000, and supervised release of the maximum
9  period of three years.

10          Do you understand that?

11          MR. ALVARADO-NOLASCO (through Interpreter):  Yes,
12  Your Honor.

13          THE COURT:   If you receive a sentence that is
14  greater than what you expected, you will still be bound by
15  your guilty plea.   You might be able -- you may be able to
16  appeal your sentence, but you will not be able to withdraw
17  your guilty plea.

18          Do you understand?

19          MR. ALVARADO-NOLASCO (through Interpreter):  Yes,
20  Your Honor.

21          THE COURT:   I would like to ask both counsel
22  whether they have any knowledge or information that Mr.
23  Alvarado is currently facing probation, parole or supervised
24  release in any state court?

25          MS. LaCAMBRA:  Not to my knowledge, Your Honor.

10

1          MR. GOLDBERG:  Nor to the Government's knowledge,

2    Your Honor.

3          THE COURT:  To your knowledge, is he facing any

4    state court criminal charges?

5          MS. LaCAMBRA:  Not to my knowledge, Your Honor.

6          THE COURT:  Mr. Alvarado, to your knowledge, are

7    you facing any state court criminal charges?

8          MR. ALVARADO-NOLASCO (through Interpreter):  No,

9    Your Honor.

10          THE COURT:  And, sir, are you currently facing

11   probation, parole or supervised release in any state court?

12          MS. LaCAMBRA:  I believe -- if I may have a moment,

13   Your Honor?

14          THE COURT:  Sure.

15      (Ms. LaCambra and Mr. Alvarado-Nolasco confer.)

16          MS. LaCAMBRA:  Thank you, Your Honor.

17          MR. ALVARADO-NOLASCO (through Interpreter):  No,

18   Your Honor.

19          THE COURT:  Let me repeat my question.  To your

20   knowledge, are you currently facing probation, parole or

21   supervised release in any state court?

22          MR. ALVARADO-NOLASCO (through Interpreter):  No,

23   Your Honor.

24          THE COURT:  I'd like to ask both counsel if the

25   nine-page plea agreement is the complete agreement between

11

1   the Government and Mr. Alvarado?

2            MS. LaCAMBRA:  It is, Your Honor.

3            MR. GOLDBERG:  It is, Your Honor.

4            THE COURT:  Ms. Alvarado (sic), did you go over the

5   plea agreement with your client in its entirety with a

6   Spanish language interpreter before he signed it?

7            MS. LaCAMBRA:  I did, Your Honor.  Stephanie

8   LaCambra went over the plea agreement with Mr. Alvarado.

9            THE COURT:  Because Stephanie LaCambra speaks

10  Spanish with her client?

11           MS. LaCAMBRA:  No, through the help of a Spanish-

12  speaking court interpreter.

13           THE COURT:  Oh, okay.  I must've misspoke.  Okay.

14  Thank you.

15           There are two terms, sir, in your appeal -- in your

16  plea agreement that I want to make sure you understand.  They

17  appear at XI on page 8 of the plea agreement.  Those terms

18  are an appeal, and also a collateral attack.  An appeal means

19  to go to a higher court and ask that higher court to review

20  or change some action that has happened at this level, the

21  trial court level.  Or collateral attack means to go to a

22  court or authority somewhere else, and in that other place

23  challenge the validity of your plea, conviction or sentence

24  in this Court.

25           Do you understand those two terms?

12

1        MR. ALVARADO-NOLASCO (through Interpreter):  Yes,
2   Your Honor.

3        THE COURT:  Let me explain -- or let me read the
4   relevant language from your plea agreement:

5              "In   exchange   for   the   Government's
6              concessions   in   this   plea   agreement,
7              Defendant  waives  to  the  full  extent  of
8              the   law   any   right   to   appeal   or   to
9              collaterally  attack  the  conviction  and
10             sentence,  unless  the  Court  imposes  a
11             custodial  sentence  greater  than  the  high
12             end  of  the  guideline  range  recommended
13             by  the  Government  pursuant  to  this
14             agreement  at  the  time  of  sentencing.  If
15             the  custodial  sentence  is  greater  than
16             the   high   end   of   that   range,   the
17             Defendant  may  appeal,  but  the  Government
18             will  be  free  to  support  on  appeal  the
19             sentence   actually   imposed.    If   the
20             Defendant   believes   the   Government's
21             recommendation  is  not  in  accord  with
22             this  plea  agreement,  the  Defendant  will
23             object   at   the   time   of   sentencing.
24             Otherwise,  the  objection  will  be  deemed
25             waived."

*Ad Hoc Reporting*

13

1       Do you understand that that is part of your plea
2 agreement?

3       MR. ALVARADO-NOLASCO (through Interpreter): Yes,
4 Your Honor.

5       THE COURT: Ms. LaCambra, are you satisfied that
6 your client understands the plea agreement in its entirety,
7 including the provision I just read?

8       MS. LaCAMBRA: I am, Your Honor.

9       THE COURT: Do you believe, Ms. LaCambra, it is in
10 your client's best interest to enter into this plea agreement
11 rather than go forward to trial?

12       MS. LaCAMBRA: I do, Your Honor.

13       THE COURT: Do you have any reason to believe that
14 he is not of sound mind, such that he cannot enter into this
15 plea agreement?

16       MS. LaCAMBRA: I do not, Your Honor.

17       THE COURT: Mr. Alvarado, in this nine-page plea
18 agreement, on the last page, above your typed name is a
19 signature that I'm holding up for you to see. Is that your
20 signature?

21       MR. ALVARADO-NOLASCO (through Interpreter): Yes,
22 Your Honor.

23       THE COURT: Other than what's contained in this
24 nine-page plea agreement, has anyone promised you anything to
25 get your to plead guilty?

14

1          MR. ALVARADO-NOLASCO (through Interpreter):   No,
2  Your Honor.

3          THE COURT:  And on pages 1 through and including 9,
4  in the bottom right-hand corner are initials.  I'm holding up
5  the first page for you to see.  Are those your initials?

6          MR. ALVARADO-NOLASCO (through Interpreter):  Yes,
7  Your Honor.

8          THE COURT:  Are you satisfied with the advice your
9  attorney has given you?

10          MR. ALVARADO-NOLASCO (through Interpreter):  Yes,
11  Your Honor.

12          THE COURT:  Has your attorney met with you and
13  answered the questions that you had about the plea agreement?

14          MR. ALVARADO-NOLASCO (through Interpreter):  Yes,
15  Your Honor.

16          THE COURT:  In the past 72 hours, have you taken
17  any narcotic drug or prescribed medicine?

18          MR. ALVARADO-NOLASCO (through Interpreter):   No,
19  Your Honor.

20          THE COURT:  Are you pleading guilty today to this
21  charge because you are in fact guilty?

22          MR. ALVARADO-NOLASCO (through Interpreter):   Yes,
23  Your Honor.

24          THE COURT:  Are you pleading guilty in order to
25  help some other person?

1    MR. ALVARADO-NOLASCO (through Interpreter):   No,
2    Your Honor.

3    THE COURT:  Has anyone threatened you to get you to
4    plead guilty?

5    MR. ALVARADO-NOLASCO (through Interpreter):   No,
6    Your Honor.

7    THE COURT:  Do you believe that entering into this
8    plea agreement is in your best interest, rather than going
9    forward to trial?

10   MR. ALVARADO-NOLASCO (through Interpreter):  Yes,
11   Your Honor.

12   THE COURT:  Then it appears to me that -- well, let
13   me ask you, in light of the constitutional rights you will be
14   giving up if you enter into this plea agreement and not going
15   forward to trial, is it still your -- and in light of the
16   elements that the Government must prove beyond a reasonable
17   doubt, is it still your desire to enter into this plea
18   agreement rather than go forward to trial?

19   MR. ALVARADO-NOLASCO (through Interpreter):
20   Guilty, Your Honor.

21   THE COURT:   Then, Peter, would you please
22   re-arraign this gentleman.

23   THE CLERK:  Now that you've been advised of your
24   rights, the charge against you, and the possible sentence,
25   how do you now plead to the one-count indictment, guilty or

1  not guilty?

2        MR.    ALVARADO-NOLASCO    (through     Interpreter):

3  Guilty, Your Honor.

4        THE COURT:   Okay.   I find that Mr. Alvarado

5  understands the nature of the charges, the charge against

6  him, the elements that the Government must prove beyond a

7  reasonable doubt in order to obtain a conviction.  I further

8  find that he understands the constitutional rights he will be

9  giving up by entering into this guilty plea.  And finally, I

10  find that there's a factual basis underlying the plea.  And

11  I will recommend to District Judge Burns that this plea be

12  accepted.

13        I am going to set your sentencing date for January

14  3 of 2006 at 9:30 before Judge Burns.

15        Normally, you have the right to make the Government

16  take its case against you to trial within 70 days of when you

17  are first indicted, or when an information first issues

18  against you, whichever event comes later in time.   When

19  there's a plea agreement in place, and in the interests of

20  justice, I can exclude some time from the calculation of that

21  70-day period.  I want to do this in this instance to allow

22  you 14 days to review my recommendations and findings, and

23  decide if you want to object to them.  I want a presentence

24  report to be prepared for you, and then reviewed by Judge

25  Burns.   Then I want you and your attorney to have the

1  opportunity to also read that presentence report and appear

2  before Judge Burns.

3              Because you normally do see that presentence

4  report, don't you?

5              MS. LaCAMBRA:  Your Honor, if I could clarify, his

6  sentencing date is the 3rd of January at what time?

7              THE COURT:  Nine-thirty.

8              MS. LaCAMBRA: Nine-thirty.  Thank you, Your Honor.

9              THE COURT:  Does either counsel have any objection

10 to me excluding time?

11             MS. LaCAMBRA:  No, Your Honor.

12             MR.   GOLDBERG:    None  from  the  Government,  Your

13 Honor.

14             THE COURT:  Mr. Alvarado, do you have any objection

15 to me excluding time, as I've just said?

16             MR. ALVARADO-NOLASCO (through Interpreter):   No,

17 Your Honor.

18             THE COURT:  All right.  Then I am going to exclude

19 time between today and when you are sentenced before Judge

20 Burns.  If there are any motions presently pending, I deem

21 them withdrawn.  If there are any other court dates between

22 now and the sentencing, I hereby vacate those dates.

23             Is there anything else we need to take care of with

24 regard to Mr. Alvarado?

25             MS. LaCAMBRA:  No, Your Honor.

**Ad Hoc Reporting**

1          MR. GOLDBERG:  No, Your Honor.

2          THE COURT:  Mr. Alvarado, I'm glad that you made

3    the decision not to change attorneys.  I think it was a wise

4    decision on your part.  Good luck to you at your sentencing

5    before Judge Burns.  That's all for today.  You may be

6    excused.

7          MR. ALVARADO-NOLASCO (through Interpreter):  Thank

8    you very much, Your Honor.

9        (Proceedings recessed.)

10

11          I, Michael J. Williamson, certify that the

12   foregoing is a correct transcript from the official

13   electronic sound recording provided to me of the proceedings

14   in the above-entitled matter.

15

16   _____        OCT 0 2 2006
     Transcriber                            Date

17

18   Michael J. Williamson_____
     **Ad Hoc Reporting**
     Approved Transcription Provider
19   for the U.S. District Court,
     Southern District of California

20

21

22

23

24

25

**EXHIBIT 3**

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

2

HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING

3

4    UNITED STATES OF AMERICA,            )
                                          )
5                    PLAINTIFF,           )    CASE NO. 05CR01150-LAB
                                          )
6          VS.                            )
                                          )    SAN DIEGO, CALIFORNIA
7    JOSE REFUGIO ALVARADO-NOLASCO,       )    JANUARY 3, 2006
                                          )    9:30 A.M.
8                    DEFENDANT.           )
     ─────────────────────────────────────)

9

10

REPORTER'S TRANSCRIPT

11

ACCEPT PLEA, P.O. REPORT AND SENTENCING

12

13

14    APPEARANCES:
      FOR THE GOVERNMENT:              CAROL C. LAM, U.S. ATTORNEY
15                                     BY:   JASON M. GOLDBERG, ESQ.
                                       ASSISTANT U.S. ATTORNEY
16                                     880 FRONT STREET
                                       SAN DIEGO, CA. 92101
17
      FOR THE DEFENDANT:              FEDERAL DEFENDERS, INC.
18                                     BY:   STEPHANIE LACOMBRE, ESQ.
                                       225 BROADWAY, STE. 900
19                                     SAN DIEGO, CA. 92101

20

21

      COURT REPORTER:                 EVA OEMICK
22                                     OFFICIAL COURT REPORTER
                                       UNITED STATES COURTHOUSE
23                                     940 FRONT STREET, STE. 2190
                                       SAN DIEGO, CA. 92101
24                                     TEL: (619) 615-3103

25

Exhibit 3

2

1
2      **SAN DIEGO, CALIFORNIA - TUESDAY, JANUARY 3, 2006, 9:30 A.M.**
3              THE CLERK:  NO. 2, 05CR1150, UNITED STATES OF
4      AMERICA VERSUS JOSE REFUGIO ALVARADO-NOLASCO.
5              MS. LACOMBRE:  GOOD MORNING, YOUR HONOR.  STEPHANIE
6      LACOMBRE FOR THE FEDERAL DEFENDERS FOR MR. ALVARADO.
7              MR. GOLDBERG:  GOOD MORNING, YOUR HONOR.  JASON
8      GOLDBERG FOR THE UNITED STATES.
9              MS. LACOMBRE:  MR. ALVARADO-NOLASCO IS NOW PRESENT
10     BEFORE THE COURT.  HE IS BEING ASSISTED BY A COURT CERTIFIED
11     SPANISH-SPEAKING INTERPRETER.
12             IF I MAY JUST HAVE ONE MOMENT, YOUR HONOR.
13             THE COURT:  SURE.
14                     (PAUSE IN PROCEEDINGS)
15             MS. LACOMBRE:  THANK YOU, YOUR HONOR.
16             MR. ALVARADO-NOLASCO IS PREPARED TO PROCEED WITH
17     ACCEPTANCE OF HIS PLEA AND SENTENCING.
18             THE COURT:  JUDGE MCCURINE HAS FILED A REPORT AND
19     RECOMMENDATION ADVOCATING THAT I ACCEPT THE PLEA THAT'S BEEN
20     TENDERED TO JUDGE MCCURINE BY THIS GENTLEMAN.  TO MY
21     KNOWLEDGE, THERE'S BEEN NO OBJECTION FILED TO THE REPORT AND
22     RECOMMENDATION.
23             MS. LACOMBRE, ARE THERE ANY OBJECTIONS?
24             MS. LACOMBRE:  NO, THERE ARE NOT.
25             THE COURT:  ON THE GOVERNMENT'S PART?

3

1          MR. GOLDBERG:  NONE FROM THE GOVERNMENT.

2          THE COURT:  I DO, THEN, ACCEPT BOTH THE REPORT AND

3    RECOMMENDATION AND MR. ALVARADO'S PLEA.  I FIND THAT THE PLEA

4    WAS KNOWING, VOLUNTARY, AND INTELLIGENT.

5          IN CONNECTION WITH SENTENCING, I'VE READ THE

6    PRE-SENTENCE REPORT.  I'VE READ THE SENTENCING CHART FILED BY

7    THE UNITED STATES AND LOOKED AT IT.  I'VE READ THE

8    GOVERNMENT'S SENTENCING MEMORANDUM AND THE DEFENDANT'S

9    SENTENCING MEMORANDUM.

10          MS. LACOMBRE, I'VE LOOKED AT THE OBJECTION THAT

11    YOU'VE FILED.  IT APPEARS TO ME THAT IF MR. ALVARADO MAINTAINS

12    THAT IT'S NOT HIM, HE'S NOT THE PERSON THAT SUFFERED THE PETTY

13    THEFT CONVICTION, THAT THAT AFFECTS THE SENTENCING RANGE IN

14    THIS CASE BECAUSE THAT CONVICTION SCORES, AND I THINK HE WOULD

15    BE IN A DIFFERENT --

16          MS. LACOMBRE:  IT WOULD BE AN ADDITIONAL POINT.

17          THE COURT:  SO YOU'RE ENTITLED TO A HEARING ON THAT,

18    BUT IT'S NOT RISK-FREE.  I WANT TO ADVISE YOU GOING IN.  IF HE

19    SAYS IT'S NOT HIM -- I'VE SEEN SITUATIONS WHERE THERE HAVE

20    BEEN MISTAKES ON THE OFFICIAL DOCUMENTS AND THE RAP SHEETS,

21    AND THAT'S FINE.  HE'S ENTITLED TO A HEARING ON THAT.  WE'LL

22    HAVE A HEARING.  BUT IF IT COMES IN AND IT'S HIM AND HE'S JUST

23    LYING TO ME, THEN THAT AFFECTS MY JUDGMENT ABOUT WHETHER HE'S

24    ACCEPTED RESPONSIBILITY.

25          SO I WANT HIM TO KNOW THAT GOING IN.  IT'S ONE THING

4

1    TO SAY "IT'S NOT ME" AND IT'S REALLY NOT HIM, AND THAT'S FINE.

2    THAT'S WHY WE HAVE HEARINGS ON THESE TYPES OF THINGS.

3    BUT IT'S ANOTHER THING TO PUT THE GOVERNMENT AND THE PROBATION

4    DEPARTMENT TO THE TEST OF GOING AND FETCHING DOCUMENTS WHEN

5    THE INCIDENT IS LAID OUT THERE, SO IF IT WAS HIM, HE'D

6    REMEMBER IT.   IT'S JEWELRY THEFT FROM A MACY'S.

7         BUT I WANT YOU TO KNOW THAT.   THAT AFFECTS MY

8    JUDGMENT ON WHETHER TO GIVE HIM FULL ACCEPTANCE OF

9    RESPONSIBILITY.   IF HE'S SAYING "OH, NO.   THAT'S NOT MY PRIOR"

10   AND THEN WE CONTINUE A CASE FOR FOUR WEEKS AND GO TO THE

11   TROUBLE OF GETTING THE DOCUMENTS, I HAVE A HARD TIME BELIEVING

12   THAT THAT PERSON HAS ACCEPTED RESPONSIBILITY FOR WHAT THEY'VE

13   DONE.

14         MS. LACOMBRE:   YOUR HONOR, I DO UNDERSTAND THAT.

15   MR. ALVARADO HAS MAINTAINED FROM THE BEGINNING THAT IT'S NOT,

16   IN FACT, HIM.   I DO HAVE THE DOCUMENTS THAT ARE AVAILABLE ON

17   THIS OFFENSE.

18         THE COURT:   I THINK HE NEEDS MORE.   I THINK YOU NEED

19   THE FINGERPRINT CARD AND THE PHOTO CARD.   BECAUSE I'VE SEEN

20   INSTANCES WHERE SOMEBODY IS USING A FAMILIAR NAME.   AND YOU

21   GET THE PHOTO OR THE FINGERPRINT, AND IT'S NOT THE FELLOW.   SO

22   I'M NOT PREJUDGING THIS AT ALL.   THAT'S A POSSIBILITY AS FAR

23   AS I'M CONCERNED.

24         BUT I'VE ALSO HAD INSTANCES WHERE PEOPLE --

25   DEFENDANTS HAVE TOLD THEIR LAWYERS "NO, THAT'S NOT ME," AND

5

1   THEY KNEW IT WAS THEM, AND WE'VE GONE THROUGH ALL THE

2   RIGAMAROLE.  AS I SAID, I'LL TAKE A VERY CHILLY VIEW OF THAT.

3        SO MY PROPOSAL IS THAT WE PUT THIS OVER AND ALLOW

4   THE DEFINITIVE DOCUMENTS TO BE OBTAINED AND SUBPOENAED, AND

5   THEN WE'LL HAVE A HEARING.

6        MS. LACOMBRE:  IF I MAY HAVE A MOMENT TO CONSULT

7   WITH MY CLIENT.

8        THE COURT:  SURE.  YOU MIGHT GO OVER THE

9   CIRCUMSTANCES.  MAYBE THAT WILL JOG HIS MEMORY.  IF IT

10  DOESN'T, THEN THAT'S ONE THING.  BUT IT WAS A JEWELRY THEFT

11  FROM A MACY'S.

12            (DISCUSSION HELD OFF THE RECORD)

13       MS. LACOMBRE:  MR. ALVARADO SAID THAT HE WOULD

14  PREFER TO GO FORWARD WITH SENTENCING TODAY.  HE'S WILLING TO

15  WITHDRAW HIS OBJECTION TO THE PRE-SENTENCE REPORT.

16       THE COURT:  OKAY.  THE COURT, THEN, FINDS THAT THAT

17  OBJECTION IS WITHDRAWN.  AND SO I WILL CONSIDER THE PETTY

18  THEFT.  I FIND THAT IT IS RELIABLY INCLUDED IN THE PROBATION

19  REPORT AND THAT THE GUIDELINE CRIMINAL HISTORY CATEGORY IS 6.

20       THAT SAID, AS I MENTIONED, I'VE READ THE -- ARE

21  THERE ANY OTHER OBJECTIONS, MS. LACOMBRE, THAT I HAVE TO -- I

22  KNOW YOU OBJECTED GENERALLY UNDER SHEPARD TO THE INFORMATION.

23  BUT I FIND THAT THE INFORMATION IS RELIABLE IN THE ABSENCE OF

24  SOME SPECIFIC DISAGREEMENT SUCH AS THE ONE THAT ORIGINALLY

25  EXISTED WITH RESPECT TO THE PETTY THEFT OFFENSE.

6

1        I OVERRULE THAT OBJECTION.  ARE THERE ANY OTHER

2   OBJECTIONS THAT NEED TO BE SPECIFICALLY ADDRESSED?

3        MS. LACOMBRE:  JUST THE FACTUAL OBJECTION TO

4   MR. ALVARADO'S CHILDREN, WHICH I BELIEVE THE PROBATION OFFICER

5   ADOPTED.

6        THE COURT:  THAT'S BEEN ANSWERED BY THE ADDENDUM,

7   AND I'LL ADOPT THAT, TOO.  I'LL SUSTAIN THE OBJECTION AS TO

8   THE CORRECT NAMES OF THE CHILDREN.

9        I'LL HEAR FROM YOU ON BEHALF OF MR. ALVARADO.

10        MS. LACOMBRE:  YOUR HONOR, MR. ALVARADO IS A

11   45-YEAR-OLD FATHER OF SEVEN.  HE FINISHED SCHOOL THROUGH --

12   THERE WAS A LITTLE CONFUSION AS TO WHETHER HE FINISHED THE

13   9TH GRADE.  IT'S MY UNDERSTANDING THAT SHORTLY AFTER THE AGE

14   OF 12, HE BEGAN TRAINING AS A PROFESSIONAL BOXER.  HE LEFT

15   SCHOOL SHORTLY AFTER THAT BECAUSE IT OFFERED HIM A MORE

16   LUCRATIVE CAREER IN ORDER TO HELP SUPPORT HIS FAMILY.

17        THROUGHOUT THE PENDENCY OF THIS CASE, HE'S

18   COOPERATED WITH THE GOVERNMENT BY ADMITTING BOTH HIS

19   CITIZENSHIP AND HIS LACK OF PERMISSION TO ENTER UPON HIS

20   ARREST, AGAIN DURING THE VIDEOTAPED CONFESSION BEFORE AGENTS,

21   AND THEN AGAIN DURING THE PRE-SENTENCE INTERVIEW WITH THE

22   PROBATION OFFICER.

23        HE ADDITIONALLY COOPERATED BY PROVIDING FINGERPRINT

24   EXEMPLARS THAT WERE USED TO PERFORM BACKGROUND CHECKS IN HIS

25   PROSECUTION.

7

1          HE HAS BEEN MARRIED TO HIS WIFE FOR THE PAST
2     13 YEARS.  THEY'VE BEEN TOGETHER FOR THE PAST 27.  THEY DO
3     HAVE THESE SEVEN CHILDREN THAT ARE LISTED.
4          AT THE AGE OF 12, MR. ALVARADO BEGAN TRAINING AS A
5     BOXER.  HE DID EVENTUALLY EARN HIMSELF A PLACE ON THE MEXICAN
6     OLYMPIC BOXING TEAM IN 1978 THROUGH 1980.  HE CONTINUED
7     TRAINING AND PURSUED A CAREER IN PROFESSIONAL BOXING, TRAVELED
8     TO COUNTRIES SUCH AS FRANCE AND JAPAN FOR HIS MATCHES.
9          HE -- UNFORTUNATELY, WHILE HE WAS INCARCERATED IN
10    2002 FOR ILLEGAL REENTRY, HE SUFFERED A LEG INJURY THAT
11    AFFECTED AND CUT SHORT HIS BOXING CAREER.  HE NO LONGER CAN
12    STAND OR SIT FOR PROLONGED PERIODS OF TIME DUE TO THE PAIN
13    THAT'S CAUSED AS A RESULT OF THIS INJURY.  HE HAD BEEN WORKING
14    IN THE KITCHEN, IS MY UNDERSTANDING.  AND AS A RESULT, DURING
15    THE ACCIDENT -- HE SUFFERED THE ACCIDENT WHILE HE WAS WORKING
16    IN THE KITCHEN.
17         AS A RESULT, HE CAN NO LONGER BOX.  HE'S LOST HIS
18    ONLY VOCATIONAL TRAINING THAT HE WOULD BE ABLE TO USE AS A
19    CAREER.  AND BECAUSE HE SUFFERED SO MUCH PAIN, HE HAS
20    MAINTAINED THAT THE DOCTOR THAT TREATED HIM DID NOT DIAGNOSE
21    HIM PROPERLY, DID NOT PERFORM THE SURGERY PROPERLY BECAUSE HE
22    CONTINUES TO SUFFER FROM SEVERE PAIN IN HIS LEG.
23         ALSO, BECAUSE MR. ALVARADO IS NOT A UNITED STATES
24    CITIZEN, SOME OF THE ALTERNATIVE SENTENCING OPTIONS THAT WOULD
25    BE AVAILABLE TO HIM, SUCH AS THE COMMUNITY CORRECTIONAL CENTER

1  AND THE ABILITY TO WORK, ARE NOT AVAILABLE TO MR. ALVARADO.  I

2  WOULD SUBMIT TO THE COURT THAT THAT'S SOMETHING THAT THE COURT

3  SHOULD TAKE INTO CONSIDERATION IN IMPOSING THE SENTENCE.

4          WITH THAT, YOUR HONOR, I WOULD SUBMIT TO THE COURT.

5          THE COURT:  MR. ALVARADO, WHAT DO YOU HAVE TO SAY ON

6  YOUR OWN BEHALF?

7          THE DEFENDANT:  WELL, BEFORE EVERYTHING ELSE, GOOD

8  MORNING, YOUR HONOR.  GOOD MORNING TO ALL YOUR STAFF.

9          THE ONLY THING THAT I CAN SAY IS THAT SOMETHING

10 UNFAIR WAS DONE TO ME.  THAT'S WHY I'M HERE.  I HAD AN

11 ACCIDENT WHEN I WAS IN THE FEDERAL INSTITUTION.  WHEN I HAD

12 THIS ACCIDENT, THEN THEY TRANSFERRED ME TO COCONINO IN ANOTHER

13 COUNTY IN ARIZONA, AND I HAD SURGERY THERE.  BUT THEY REALLY

14 HURT MY FOOT.  I WAS DISABLED.  AND SO I COULDN'T FINISH DOING

15 MY TIME THAT THE JUDGE HAD SENTENCED ME TO.  THEY KICKED ME

16 OUT TO TIJUANA.

17         THAT'S WHY I TRIED TO ENTER HERE AGAIN, TO SOLVE THE

18 PROBLEM I HAD.  AND THAT'S WHY -- WELL, I HAD SOME BAD LUCK.

19 I WAS UNABLE TO SOLVE THIS PROBLEM WITH AN ATTORNEY THAT I

20 COULD GET OUTSIDE.  THAT'S THE ONLY THING THAT I CAN SAY, SIR.

21 THE REST IS UP TO YOU.

22         THE COURT:  MR. GOLDBERG.

23         MR. GOLDBERG:  THE PARTIES HAVE A PLEA AGREEMENT IN

24 THIS CASE UNDER WHICH THERE'S A JOINT SENTENCING

25 RECOMMENDATION.  THAT WOULD BE THE GOVERNMENT'S

1    RECOMMENDATION.

2          THE COURT:  IT'S PREDICATED ON ERRONEOUS

3    INFORMATION.  IT'S PREDICATED ON A CONTEMPLATION OF CRIMINAL

4    HISTORY CATEGORY 5, NOT 6.  HE'S A 6.

5          MR. GOLDBERG:  THERE'S NO MENTION OF CRIMINAL

6    HISTORY IN THE PLEA AGREEMENT.  THE PARTIES AGREED TO

7    RECOMMEND THE LOW END OF THE GUIDELINE RANGE.

8          THE COURT:  THAT'S 24 MONTHS?  IS THAT YOUR

9    RECOMMENDATION?

10          MR. GOLDBERG:  THAT'S OUR RECOMMENDATION.

11          THE COURT:  DO YOU AGREE WITH THAT?  THE SENTENCING

12    SUMMARY CHART SAID 5, BUT THE PLEA AGREEMENT SAYS THERE'S NO

13    AGREEMENT ON CRIMINAL HISTORY.

14          AS I MENTIONED TO YOU, I FIND IT'S 6 GIVEN THE

15    OBJECTION TO THE PETTY THEFT CONVICTION IS WITHDRAWN.  DO YOU

16    AGREE THAT WOULD BE THE RECOMMENDATION?  YOU CONTEMPLATED

17    THAT, MS. LACOMBRE?

18          MS. LACOMBRE:  YES, YOUR HONOR.

19          THE COURT:  THE GUIDELINES ARE, OF COURSE, ADVISORY.

20    BUT THEY'RE A FACTOR TO BE CONSIDERED IN THE CALCULUS UNDER

21    3553.  THE COURT FINDS THAT THESE GUIDELINE CALCULATIONS APPLY

22    IN THIS CASE.

23          THE OFFENSE OF COMING BACK INTO THE UNITED STATES

24    AFTER BEING DEPORTED FOLLOWING A FELONY CONVICTION IS A --

25    COMING BACK IN IS AN 8.  FOUR LEVELS ARE ADDED BECAUSE

1    MR. ALVARADO WAS PREVIOUSLY CONVICTED OF A FELONY HERE IN THE

2    UNITED STATES.  SO THAT TAKES HIM TO 12.

3            HE HAS ACCEPTED RESPONSIBILITY, AND I ADJUST

4    DOWNWARD TWO POINTS FOR THAT.  THAT LEAVES HIM AT AN ADJUSTED

5    OFFENSE LEVEL OF 10.

6            HIS CRIMINAL HISTORY SCORE I FIND IS PROPERLY

7    CALCULATED AT 13 BY THE PROBATION DEPARTMENT.  THAT PUTS HIM

8    IN CRIMINAL HISTORY CATEGORY 6.

9            NOW, HERE'S THE PROBLEM THAT I HAVE, MR. ALVARADO:

10   YOU KEEP COMING BACK.  WE KEEP TELLING YOU YOU HAVE NO RIGHT

11   TO BE HERE.  I LISTENED TO YOUR EXPLANATION OF WHY YOU CAME

12   BACK THIS TIME, BUT YOU DIDN'T HAVE TO BE IN THE UNITED STATES

13   IN ORDER TO PURSUE WHATEVER RIGHTS YOU MAY HAVE FOR, I TAKE

14   IT, MEDICAL MALPRACTICE OR SOME CLAIM AGAINST THE UNITED

15   STATES FOR THE IMPROPER CARE THAT YOU HAD WHEN YOU WERE HERE

16   BEFORE.

17           IT'S A LITTLE IRONIC, I HAVE TO SAY, BECAUSE YOU'VE

18   COME OVER HERE ILLEGALLY A NUMBER OF TIMES.  AND WE KEEP

19   TELLING YOU "DON'T COME BACK."  THEN YOU COME OVER HERE, AND

20   YOU ARE IN THE PRISON SYSTEM, AND YOU HAVE SOME MEDICAL

21   PROCEDURE.  AND NOW YOU WANT TO, I TAKE IT, SUE THE UNITED

22   STATES.  IT GOES WITHOUT SAYING THAT IF YOU HADN'T COME HERE

23   IN THE FIRST PLACE AND VIOLATED THE LAWS, THAT YOU WOULDN'T BE

24   IN THE PREDICAMENT THAT YOU'RE IN.

25           BUT THE POINT ABOUT HAVING COME TO BACK OVER HERE

11

1     THIS TIME IN ORDER TO SUE, YOU DON'T HAVE TO DO THAT.  YOU CAN

2     HIRE A LAWYER IN THE UNITED STATES, AND HE COULD PURSUE OR SHE

3     COULD PURSUE YOUR CLAIM HERE.  YOU DON'T HAVE TO BE IN THE

4     U.S. FOR THAT TO HAPPEN.  SO I DON'T ACCEPT THAT.

5            FURTHERMORE, IT JUST DOESN'T STRIKE ME THAT THAT'S

6     REALLY THE REASON.  YOU CAME HERE IN 2002, WERE ARRESTED AND

7     CONVICTED, AND RECEIVED A 75-DAY SENTENCE THEN.  YOU CAME BACK

8     ALMOST AS SOON AS YOU WERE RELEASED FROM CUSTODY.  YOU WERE

9     CONVICTED AGAIN AND GIVEN 90 DAYS.  YOU CAME BACK AGAIN.

10    YOU WERE ARRESTED THIS TIME, CONVICTED OF A FELONY, AND GIVEN

11    18 MONTHS IN CUSTODY.  HERE YOU ARE BACK AGAIN.

12            I NOTE THAT YOU'RE STILL ON PROBATION OR SUPERVISED

13    RELEASE ON THE LAST CONVICTION IN THE DISTRICT OF ARIZONA.

14    YOU HAVEN'T EVEN FULFILLED THE SUPERVISED RELEASE TERM YET AND

15    YOU COME BACK AGAIN.  SO I ASSUME THEY'RE GOING TO REVOKE YOU

16    ON THAT TERM.

17            I LOOK AT THIS RECORD, AND IT'S NOT THE RECORD OF A

18    GUY THAT HAD A PROMISING CAREER AS A FIGHTER.  IT'S A RECORD

19    OF A GUY THAT COMES OVER HERE AND VIOLATES THE LAW, USES

20    NARCOTICS, COMMITS THEFTS.

21            YOU CAN'T COME INTO THE UNITED STATES.  YOU HAVE NO

22    RIGHT TO BE HERE.  AS I SAID, IF YOU HAVE SOME LEGAL CLAIM

23    AGAINST THE UNITED STATES, THEN YOU CAN PURSUE THAT FROM

24    MEXICO BY HIRING A LAWYER HERE IN THE UNITED STATES TO PURSUE

25    THE CLAIM FOR YOU.  BUT THAT DOESN'T GIVE YOU A RIGHT TO COME

COMPUTER-AIDED TRANSCRIPTION

12

1    IN BECAUSE YOU MAINTAIN THAT YOU HAVE A CLAIM AGAINST THE U.S.

2           THE COURT'S LOOKED AT THE HISTORY AND

3    CHARACTERISTICS OF THE DEFENDANT.  I FIND HERE THE NEED FOR A

4    DETERRENCE IS OF PARAMOUNT CONSIDERATION.  I DON'T KNOW WHAT

5    TO DO TO DETER THIS FELLOW, BUT I'M GOING TO ADD INCREMENTALLY

6    TO THE SENTENCE THAT HE'S RECEIVED IN THE PAST.  HE GOT

7    18 MONTHS BEFORE.  I'LL FOLLOW THE RECOMMENDATION OF THE

8    PARTIES AND GIVE HIM THE LOW END HERE, WHICH IS 24 MONTHS.

9           I'M INCLINED TO DO WHAT PROBATION SUGGESTED AND GIVE

10   HIM A MID-TERM, BUT I WON'T.  YOU'VE BARGAINED FOR THIS.

11          NOW, HERE'S THE MESSAGE, MR. ALVARADO:  DON'T COME

12   BACK AGAIN.  DON'T COME BACK AGAIN.  AS I SAID, YOU'RE GOING

13   TO GO BACK TO ARIZONA, AND THEY'RE GOING TO SENTENCE YOU ON

14   THE SUPERVISED RELEASE VIOLATION.  IF YOU COME BACK WITHIN THE

15   NEXT THREE YEARS HERE IN THE UNITED STATES, I'M GOING TO GIVE

16   YOU THE MAXIMUM SENTENCE.  I DON'T KNOW WHAT ELSE TO DO TO

17   KEEP YOU OUT OF THIS COUNTRY.  YOU HAVE TO MAKE YOUR WAY IN

18   MEXICO.

19          SO 24 MONTHS FOLLOWED BY THREE YEARS SUPERVISED

20   RELEASE.  THE SINGLE CONDITION OF SUPERVISED RELEASE IS THAT

21   MR. ALVARADO NOT RETURN TO THE UNITED STATES.  HE HAS NO RIGHT

22   TO BE HERE.

23          THE COURT FINDS THAT HE'S WITHOUT FUNDS TO PAY A

24   FINE.  I IMPOSE NO FINE.  I DO IMPOSE A $100 PENALTY

25   ASSESSMENT, WHICH CAN BE PAID BY HIM WORKING DURING THE COURSE

COMPUTER-AIDED TRANSCRIPTION

13

1    OF HIS INCARCERATION.

2            MS. LACOMBRE, DO YOU AGREE THAT THE SENTENCE

3    PRONOUNCED IS CONTEMPLATED BY THE PLEA AGREEMENT AND RESULTS

4    IN A WAIVER OF ANY RIGHT TO APPEAL OR COLLATERALLY ATTACK THE

5    JUDGMENT OF THE COURT IN THE FUTURE?

6            MS. LACOMBRE:  I DO.

7            THE COURT:  I MAKE THAT FINDING AS WELL.

8            IS THERE ANY OTHER CHARGE TO DISMISS?

9            MR. GOLDBERG:  NO.

10           THE COURT:  GOOD LUCK, MR. ALVARADO.  DON'T COME

11   BACK.

12                          --o0o--

13                  I HEREBY CERTIFY THAT THE TESTIMONY

14                  ADDUCED IN THE FOREGOING MATTER IS

15                  A TRUE RECORD OF SAID PROCEEDINGS.

16

17                  Eva Derrick  10-6-06

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION